(No. 21652.—

EDGAR M. SNOW *et al.* Defendants in Error, *vs.* ALEXANDER S. SCHULMAN, Plaintiff in Error.

*Opinion filed February 23, 1933—Rehearing denied April 11, 1933.*

MILLER, GORHAM, WALES & ADAMS, (AMOS C. MILLER, and FREDERIC O. MASON, of counsel,) for plaintiff in error.

TENNEY, HARDING, SHERMAN & ROGERS, ' (ROGER SHERMAN, HENRY F. TENNEY, S. ASHLEY GUTHRIE, and WILLIAM W. MILLER, of counsel,) for defendants in error.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

This cause is here on *certiorari* to review a judgment of the Appellate Court for the First District affirming, on appeal, a judgment rendered by the circuit court of Cook county on an arbitrator's award finding that Edgar M. Snow & Co. was entitled to receive $28,000, with interest at five per cent per annum from April 2, 1925, from Alexander S. Schulman, as a commission for procuring the acceptance of a loan of $800,000 from the New England Mutual Life Insurance Company to Schulman.

In the trial court the parties entered into an arbitration agreement, by the terms of which "(1) all questions of law or fact at issue between the parties, as fixed in the pleadings filed in said suit, shall be, and they are hereby, irrevocably submitted to Charles M. Thomson as arbitrator, and the pleadings in such suit and depositions shall be introduced in evidence before the arbitrator; (2) the arbitrator shall hear such evidence and arguments as he may deem necessary to determine the issues raised, he being the sole judge of the admissibility, competency, relevancy, materiality and weight of the evidence, and shall decide such issues and fix the amount, if any, due the plaintiffs in said case; * * * (4) the arbitrator may on his own motion,

and shall at the request of either party, at any stage of the proceedings, submit any question of law arising in the course of the reference to the opinion of the court, stating the facts upon which the question arises, and such opinion, when given, shall bind the arbitrator in making his award."

The arbitrator prepared an exhaustive report, taking up forty-one pages of the abstract of record. To quote from it: "The plaintiffs, Edgar M. Snow and Andrew A. Brock, are partners engaged in the real estate business under the name and style of Edgar M. Snow & Co. The defendant, Alexander S. Schulman, had undertaken to close his purchase of two contiguous pieces of property on May 15, 1925. These pieces of property are referred to in the testimony as the Bass property, located at the northeast corner of Dearborn and Harrison streets, Chicago, and the Ellsworth property, adjoining the Bass property on the north. In connection with his purchase of those properties the defendant on April 1, 1925, made application in writing to the plaintiffs for a loan of $1,000,000, agreeing therein to pay the plaintiffs a commission of three and one-half per cent on the amount of said loan, provided they procured the acceptance of that application. It is the claim of the plaintiffs that they did procure such acceptance by a lender ready, willing and able to make the loan on the terms set out in the application, and that therefore they are entitled to the commission stipulated by the terms of the application. Claiming the contrary, the defendant resisted payment of the commission, which resulted in this suit brought by the plaintiffs against the defendant for its recovery." It is conceded that the original application was amended so that it specified that the amount of the loan was to be $800,000 instead of $1,000,000.

The report of the arbitrator included the following findings: "On the facts shown by the evidence as set out in the statement heretofore appearing herein and for the reasons given in the foregoing opinion, I find: (1) that

the defendant, Alexander S. Schulman, by his application for a loan executed on April 1, 1925, as modified on April 17, 1925, agreed to pay the plaintiffs, Edgar M. Snow and Andrew A. Brock, doing business as Edgar M. Snow & Co., a commission of three and one-half per cent of the amount of the loan for procuring the acceptance of that application, as so modified, on or before April 28, 1925; (2) that the undertaking of the plaintiffs was to procure a valid and binding acceptance of such application within the time stipulated; (3) that the plaintiffs did procure a valid and binding acceptance of that application by the New England Mutual Life Insurance Company on April 22, 1925, and that such company was at all times ready, willing and able to make said loan; (4) that such an acceptance by the insurance company required the approval of the loan by its finance committee; (5) that the finance committee did properly approve the loan applied for by the defendant on April 22, 1925; (6) that the wording of the motion voted by the finance committee did not purport to cover the details or terms of the application and that it was not necessary that it should; (7) that the record of the vote taken by the finance committee in approval of the defendant's application was not inconsistent with or contrary to any of the terms of the defendant's application; (8) that by the terms of the defendant's application the lender was to be allowed a reasonable time for examination of the abstracts of title to the property being offered as security for the loan; (9) that the abstracts of title in question were delivered to the plaintiffs, and by them to counsel for the lender, on or about April 23, 1925; (10) that memoranda setting out divers and sundry matters subject to which the titles were found to be in certain designated parties were submitted by counsel for the lender to counsel for the defendant on April 29, 1925; (11) that the only serious or material objection to the titles as found by counsel for the lender was the one involving the old lease on the Bass property; (12) that

this item was waived by the general counsel representing the lender on May 8, 1925, and the defendant was advised to that effect on that date; (13) that on the same day counsel for the lender advised counsel for the defendant that he was satisfied there was nothing in the remaining items which could not be taken care of, and that he would be glad to take up on that day the points necessary for clearing up the remaining items and closing; (14) that the time taken for examination of the titles and the consideration of the items referred to, subject to which the titles were found to be in certain designated parties, being from April 22 to May 8, 1925, was not an unreasonable time for such examination and consideration; (15) that the plaintiffs are entitled to be paid the commission stipulated in the application for the loan as executed by the defendant, amounting to three and one-half per cent on the amount of the loan, which was $800,000."

After the arbitrator had prepared his report the publication of the award was postponed to enable the parties to submit to the court "any question or questions of law involved herein, should they choose so to do." Thereafter four questions of law were submitted to the court by plaintiff in error, Schulman. The questions and the court's answers to the same are as follows:

"1. Was the plaintiff required, in order to earn said commission, to procure, within the time limited, a legally valid acceptance of defendant's application, for breach of which by the acceptor of the application an action by defendant would lie?—Yes, the arbitrator has specifically ruled to such effect in his opinion, at pages 24, 25.

"2. Did the action of the finance committee constitute an acceptance of defendant's application?—No, but in the opinion of the court it was not necessary to a binding acceptance by the insurance company of the defendant's application that the action of the finance committee constitute such an acceptance. In the opinion of the court the

action of the finance committee constituted an approval of the proposed loan to the defendant, which was all that was necessary so far as the finance committee was concerned, and, following that, in the opinion of the court there was a valid and binding acceptance by the insurance company of the defendant's application for the loan, as found by the arbitrator in his opinion, at page 27.

"3. Since the lender—the acceptor of the application—was by the terms of the application to loan a part of the amount applied for more than one year after the time limited for securing the acceptance, was the acceptance required to be in writing, signed by the acceptor of the application or by some person thereunto by the acceptor lawfully authorized?—No, but in the opinion of the court this question is entirely immaterial in view of the fact that the arbitrator has found, at page 27 of his opinion, that a valid and binding acceptance of the application for the loan was made in writing, which finding the court approves.

"4. Defendant having no information, either at the time he was notified by plaintiff that his application had been accepted by said insurance company, or at the time said loan fell through, or until the taking of the depositions after suit begun on the above claim, of the above facts as to the action of the finance committee of the insurance company and the extent of its authority in the making of loans and the acceptance of applications therefor, is defendant now barred from claiming that the New England Mutual Life Insurance Company never accepted all the material terms of his application, or that its acceptance was not a legally valid one, or that such acceptance, not being by a writing signed by the insurance company or by its duly authorized agent, was not valid?—No, the defendant is not barred from making the claims referred to, but the arbitrator has made findings that none of the claims are tenable, and the court approves those findings.

"And the court having stated its opinion with respect to the said propositions of law so submitted to the court by counsel for the defendant, it is ordered that the opinion of this court as so stated shall bind the arbitrator in making his award herein as provided in the agreement of the parties hereinabove referred to."

After the court had considered these questions and "had passed upon them but had not entered the order," the arbitrator, at the request of Schulman, submitted to the court a fifth question, as follows:

"5. Did the letter of Wallace D. Dexter, Jr., to John Jeffries & Sons, dated April 22, 1925, constitute an acceptance of defendant's application?"

The court refused to pass upon this question. The arbitrator then made his award, in which he stated "that the facts established by the evidence" are "as specifically set out in the findings."

In this case there is no dispute in the evidence as to the material evidentiary facts. On April 1, 1925, plaintiff in error, Schulman, in writing, engaged defendants in error to procure for him a loan of $1,000,000 on specified terms and agreed to pay as commission three and one-half per cent on the amount of the loan. On April 3, 1925, defendants in error wrote John Jeffries & Sons, of Boston, their correspondents, stating that they had Schulman's application for a $1,000,000 loan and solicited their assistance in the matter. Jeffries saw a Mr. Dexter, assistant secretary of the New England Mutual Life Insurance Company, gave him defendants in error's letter and asked whether a loan could be made. Dexter prepared a memorandum of application from that letter to submit to the finance committee of the insurance company, which had the sole power to accept applications or to make loans for that company. Dexter mistakenly prepared the application for a loan to the Ellsworth Building Corporation, which the letter stated Schulman was about to incorporate, instead of

to Schulman. After considerable negotiation, on April 17 Schulman made an amended application for $800,000 upon certain specified terms. The records of the finance committee of the New England Mutual Life Insurance Company show no action of the finance committee upon this application but do show that at a meeting of that committee on April 22, 1925, "it was voted to lend the Ellsworth Building Corporation $800,000 for seven years at six per cent, $12,000 to be re-paid semi-annually to November 1, 1927, and $20,000 semi-annually thereafter to November 1, 1931, and the balance of $580,000 on May 1, 1932, to be secured by first mortgage of real estate on the northeast corner of Harrison and Dearborn streets, Chicago." This action of the finance committee, as shown by its records, does not correspond either with the name of the party to whom the loan was to be made or the terms upon which it was to be made, or with the application made by Schulman for the loan. On the same day, Dexter, who the records show had no authority to bind the company to make a loan, wrote to Jeffries & Sons as follows:

*"Messrs. John Jeffries & Sons,*
Barristers' Hall, Boston, Massachusetts.

"GENTLEMEN—As I have already telephoned you this morning, the finance committee has approved a loan of $800,000 to the Ellsworth Building Corporation for a term of seven years from May 1 at six per cent, $12,000 to be paid on account of the principal every six months to November 17, 1927, and $20,000 every six months thereafter to November 1, 1931, and the.balance of $580,000 on May 1, 1932, secured by mortgage of real estate on the northeast corner of Harrison and Dearborn streets, extending through to Plymouth court, Chicago.

"The company is to advance the sum of $575,000 when the title has been approved and the papers have been prepared, and the balance of $225,000 is not to be paid by the company until the new building which Mr. Schulman is to build upon the corner has been completed and the time for filing mechanics' liens has expired or a bond satisfactory to the company against such liens has been furnished. We understand that on account of present leases construction cannot begin until about May 1, 1926. Inter-

est on balance of $225,000 will not accrue until the money has been paid by the company.

"As soon as a signed application has been received, instructions will be forwarded to our attorneys to prepare the necessary papers.

"Yours very truly,

WALLACE D. DEXTER, Jr., *Assistant Secretary.*"

It is to be noted that the terms stated in Dexter's loan correspond neither with Schulman's application nor with the record of the insurance company's finance committee. That it was not intended to be an acceptance of an application for a loan is evidenced by the last paragraph in the letter, "As soon as a signed application has been received, instructions will be forwarded to our attorneys to prepare the necessary papers." On April 22, 1925, another application was made by Schulman on the company's blank for a loan of $800,000 upon terms differing from those stated in Dexter's letter and from those stated in the records of the finance committee. With reference to this application no action was ever taken by the finance committee or anyone authorized to bind the insurance company to make a loan or make a valid acceptance of a loan on behalf of the company. It is evident, therefore, that in law there never was a valid acceptance of Schulman's application for a loan to him in any amount by the insurance company. To constitute a contract by offer and acceptance the acceptance must conform exactly to the offer, and although a reply to an offer purports to accept the offer, it is not an acceptance but is a counter-offer and does not create a contract where it adds qualifications and requires the performance of new conditions. (*Worley* v. *Holding Corp.* 348 Ill. 420.) A letter written in reply to an offer, which re-states the terms of the offer but with some variations, though slight, cannot be regarded as the consummation of a contract and requires an acceptance upon the terms thus stated, and until unequivocally accepted is a mere proposition or offer. *Maclay* v. *Harvey,* 90 Ill. 525.

Section 6 of the Arbitrations and Awards act provides in part: "The arbitrators may, of their own motion and shall by request of a party (*a*) at any stage of the proceedings, submit any question of law arising in the course of the reference for the opinion of the court, stating the facts upon which the question arises, and such opinion when given shall bind the arbitrators in the making of their award; (*b*) state their final award as to the whole or part of the reference in the form of a conclusion of fact for the opinion of the court on the questions of law arising and such opinion shall finally conclude the proceedings, except as by this act otherwise provided." Section 14 of the act provides: "Writs of error and appeals may be taken from any decision of the court upon questions of law under section 6 of this act, or matters arising in the course of the proceedings, by the party feeling himself aggrieved, as in other cases."

In response to question 2, before quoted, the court properly held that the action of the finance committee did not constitute an acceptance of defendant's application. The court then erroneously held as a matter of law that following the approval of the finance committee there was a valid and binding acceptance by the insurance company of the defendant's application for the loan, as found by the arbitrator in his opinion at page 27. The opinion of the arbitrator was based on the letter of Dexter to Jeffries, as there was no other evidence in the record at any place tending to show that there was a valid and binding acceptance by the insurance company of Schulman's application for the loan. There was no basis for the finding of the arbitrator, or of its approval, as a matter of law, by the court.

By the terms of the application for a loan the contract for the making of the loan was not to be completed within one year from the time of the acceptance of the application or the making of the contract, and it was therefore necessary that the acceptance of the application, or some

note or memorandum thereof, if it were accepted, must, to be valid, be in writing and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized. (Cahill's Stat. 1931, chap. 59, sec. 1.) The court not only erred in answering question 3 in the negative, but also erred in holding, as a matter of law, that it was immaterial whether the acceptance was required to be in writing, and it approved, as a matter of law, a finding of the arbitrator that a valid and binding acceptance of the application for the loan was made in writing, when the fact is no valid and binding acceptance of the application for the loan was made in writing or otherwise. The finding of the court being founded on page 27 of the arbitrator's opinion, and such opinion being based solely on the letter of Dexter to John Jeffries & Sons dated April 22, 1925, the fifth proposition which counsel for Schulman sought to have submitted became very material, as it was the only letter or writing of anyone in the employ of the insurance company with reference to the acceptance of Schulman's application.

Counsel for defendants in error claim that the request of counsel for the submission of the fifth proposition came too late. Section 6 of the Arbitrations and Awards act, quoted above, provides that such questions of law may be submitted "at any stage of the proceedings." This language is plain and unambiguous. The arbitrator had not yet made his report and the court had not answered the questions already propounded. There being no controversy as to the salient facts in the case, the conclusion to be drawn therefrom was one as to their sufficiency at law. The answers of the court to the questions mentioned, and its refusal to allow the fifth question to be submitted, were erroneous.

The judgments of the Appellate Court and of the circuit court are therefore reversed and the cause remanded to the circuit court. *Reversed and remanded.*